**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CURTIS CROSLAND,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-2416** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon consideration of

Defendants' Partial Motion for Summary Judgment, and any response thereto, it is **HEREBY**

**ORDERED** that the Motion is **GRANTED. JUDGMENT IS ENTERED** as follows:

(1) in favor of Defendant Joseph Descher on all claims against him (Counts 1, 2, 3, and
5);

(2) in favor of Defendants City of Philadelphia; Joseph Descher; Edward Rocks; James
McNesby; Dominick Mangoni; Michael P. Fenerty, as personal representative of the
estate of John Cimino; and Martha Hughes, as personal representative of the estate of
Edward Hughes ("the City Defendants") as to any claim of deliberate fabrication or
deliberate suppression of evidence (Counts 1, 3, and 4), insofar as such claim is based
on alleged fabrication or suppression of information as to Michael Ransome as an
alternative suspect;

(3) in favor of each of the City Defendants as to any claim of deliberate fabrication or
deliberate suppression of evidence (Counts 1, 3, and 4), insofar as such claim is based
on alleged fabrication or suppression of information provided by Rodney Everett;

(4) in favor of each of the City Defendants as to any claim of deliberate fabrication or deliberate suppression of evidence (Counts 1, 3, and 4), insofar as such claim is based on alleged fabrication or suppression of Rodney Everett's failure of a polygraph examination; and

(5) in favor of the City of Philadelphia on Plaintiff's municipal liability claim (Count 4), insofar as such claim is based on allegations that the City had a custom of deliberately suppressing police activity sheets or failed to train, discipline, or supervise.

BY THE COURT:

_____

ANITA B. BRODY, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CURTIS CROSLAND,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-2416** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Defendants City of Philadelphia; Joseph Descher; Edward Rocks; James McNesby; Dominick Mangoni; Michael P. Fenerty, as personal representative of the estate of John Cimino; and Martha Hughes, as personal representative of the estate of Edward Hughes (collectively, the "City Defendants"), by and through the undersigned counsel, hereby move for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56. In support of this Motion, the City Defendants incorporate the attached Memorandum of Law.

The City Defendants respectfully request that this Court grant them partial summary judgment as follows:

(1) in favor of Defendant Joseph Descher on all claims against him (Counts 1, 2, 3, and 5);

(2) in favor of each of the City Defendants as to any claim of deliberate fabrication or deliberate suppression of evidence (Counts 1, 3, and 4), insofar as such claim is based on alleged fabrication or suppression of information as to Michael Ransome as an alternative suspect;

(3) in favor of each of the City Defendants as to any claim of deliberate fabrication or deliberate suppression of evidence (Counts 1, 3, and 4), insofar as such claim is based on alleged fabrication or suppression of information provided by Rodney Everett;

(4) in favor of each of the City Defendants as to any claim of deliberate fabrication or deliberate suppression of evidence (Counts 1, 3, and 4), insofar as such claim is based on alleged fabrication or suppression of Rodney Everett's failure of a polygraph examination; and

(5) in favor of the City of Philadelphia on Plaintiff's municipal liability claim (Count 4), insofar as such claim is based on allegations that the City had a custom of deliberately suppressing police activity sheets or failed to train, discipline, or supervise.

Date: January 31, 2025

Respectfully submitted,

/s/ Adam R. Zurbriggen
Adam R. Zurbriggen, Senior Attorney
Pa. Attorney ID No. 331169
Daniel Cerone, Div. Deputy City Solicitor
Attorney Identification No. 321507
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5011 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov
daniel.cerone@phila.gov

*Attorneys for City Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CURTIS CROSLAND,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-2416** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff Curtis Crosland ("Plaintiff" or "Crosland") brought this lawsuit alleging that he served nearly 34 years in prison for a murder that he did not commit. He alleges that the Philadelphia Police Detectives involved in the murder investigation fabricated the statements made by the witnesses against him and deliberately concealed exculpatory evidence, in violation of his constitutional rights. In addition to naming several individual former Philadelphia police detectives, Plaintiff has named as a Defendant the City of Philadelphia ("the City"), alleging the City is subject to municipal liability under 42 U.S.C. § 1983 for such violations.

Defendants City of Philadelphia, Joseph Descher, Edward Rocks, James McNesby, Dominick Mangoni, Michael P. Fenerty, as personal representative of the estate of John Cimino, and Martha Hughes as personal representative of the Estate of Edward Hughes (collectively, the "City Defendants"), now move for partial summary judgment.

## I.      STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS[1]

On December 5, 1984, Il Man Heo (nicknamed "Tony"), the owner of a convenience store in South Philadelphia, was shot and killed during an attempted robbery. *See* Ex. A

---

[1] Only those facts relevant to this partial motion for summary judgment are set out below.

(Homicide Division Miscellaneous Case Summary). As multiple eyewitnesses told police on the night of the murder, the assailant came into the store with his face concealed with a scarf, said it was a stickup, shot Heo in the head and ran out of the store. *See id.*

The initial assigned investigator was Defendant Detective Albert Nespoli of the Philadelphia Police Department's Homicide Division. *See* Ex. A (Homicide Division Miscellaneous Case Summary). Days into the investigation, Detective Nespoli received three telephone messages providing tips about the shooting, indicating that a man named Michael Ransome was one of the individuals involved. *See* Ex. B (handwritten messages). These messages were recorded by handwritten notes placed in the homicide file. *See id.* One note indicates that the President of the Korean Businessmen's Association, Bo Lim, called to say he "rec[ieved] info[rmation] from" a "N/M" (i.e. a Black male) that the shooter was Michael Ransome and that a second man was involved, a man named "Robert" that lived at 2600 Manton Street. *Id.* at CITY 000187. Another note indicates that a man named Bob Kotzpaner, who was associated with the Citizens Crime Committee, called to say he had received information from a Black female indicating that the "doer" was a man named "Clinton" and that the lookout was Michael Ransome. *Id.* A third note indicated that an "unidentified caller stated . . . that the man who shot Tony (Il Man Heo) . . . was Michael Ransom[e]." *Id.* at CITY 000186.

Detectives attempted to locate Ransome. *See* Ex. C (1/7/85 Activity Sheet). According to an activity sheet dated December 13, 1984, Detectives Brignola and Ansel looked into Michael Ransome's background, learning he had previously been arrested for murder, and resided at 1147 South 26th Street. Ex. D (12/13/84 Activity Sheet). According to a subsequent activity sheet

dated January 7, 1985, the Detectives established a surveillance around Ransome's "residence and haunts," but did not find him. Ex. C (1/7/85 Activity Sheet).

Failing to locate Ransome, the investigation went cold for more than two years. *See* 4th Am. Compl., ECF No. 73 (cited hereafter as "4AC"), at ¶ 39.

The investigation resumed in 1987, when Detectives Edward Hughes and Dominick Mangoni interviewed Rodney Everett. *See* Ex. E (4/15/87 Interview of Rodney Everett). Prior to this interview, Everett told a probation officer he knew, William Massey, that he wanted to provide information to the police about the Heo murder, in the hopes of obtaining release from custody. Ex. F at CITY 000003 (4/15/87 Interview of William Massey). Everett met with Detectives Hughes and Mangoni on April 15, 1987, providing a written statement, and telling the detectives that Crosland had confessed to him that he had shot Heo. *See* Ex. E (4/15/87 Interview of Rodney Everett). Everett also informed the Detectives that Crosland had told him that Ransom was present at the shooting. *Id.* at CITY 00002.

Detectives Hughes and Mangoni interviewed Everett a second time six days later, on April 21, 1987. *See* Ex. G (4/21/87 Interview of Rodney Everett). During this interview he reaffirmed that Crosland had confessed to him. *See id.* According to an activity sheet, following this reinterview, Everett "was polygraphed on his original statement about being told by Curtis Crosland and was DI[,]"—"DI" meaning "deception indicated." Ex. H (4/22/87 Activity Sheet); *see also* Ex. I (Mangoni Dep.) at 179:15–16.

A few days later, on April 24, 1987, Detective Hughes and Mangoni located and interviewed Michael Ransome about the Heo murder. Ex. J (4/24/87 Interview of Michael Ransome). Ransome denied any involvement in the shooting, stating he was at home on the night

of the shooting with his brother and sister-in-law. *Id.* at CITY 000005. He refused to take a lie detector test about his statement to the Detectives. *Id.* at CITY 000007.

Detectives Rocks and Mangoni interviewed Everett again a few months later, on July 7, 1987. Ex. K (7/7/87 Interview of Rodney Everett). During this interview, Everett reiterated that, as far as he knew, Crosland only told Michael Ransome—who, according to Everett, was present with Crosland at the Heo murder—and Frank Turner. Everett added that Crosland "may" have also told Talmadge Garwood (who, according to Everett, was Crosland's "close friend"), as well as Lester Turner (Crosland's cousin), Michael Turner (also Crosland's cousin), and Raymond Crosland (Crosland's brother). *Id.* at CITY 000026.

Detective Cimino met with Assistant District Attorneys Joel Rosen and Barbara Christie—the latter the Chief of the Homicide Division within the Philadelphia District Attorney's Office. *See* Ex. L (12/9/87 Activity Sheet). According to an activity sheet dated December 9, 1987, during this meeting Detective Cimino and ADAs Rosen and Christie "reviewed the contents of th[e Heo] investigation, after which a Warrant of Arrest was authorized for Curtis Crosland . . . charging him with Murder, Robbery, Attempt[ed] Theft, REAP [reckless endangerment of another person], and PIC [possession of an instrument of crime]." *Id.* Detective Cimino prepared an affidavit of probable cause in support of an arrest warrant for Crosland. *See id.*; Ex. M (arrest warrant); Ex. N ("Continuation of Probable Cause" Affidavit). The affidavit relied on Everett's statement to the detectives. *See* Ex. N ("Continuation of Probable Cause" Affidavit) This warrant was approved by a bail commissioner, and Crosland was arrested for the Heo murder. *Id.*

Prior to trial, Crosland's initial criminal defense attorney, Robert Hoffa, was provided with discovery. *See* Ex. O (2/8/1988 Letter to Robert Hoffa, Esq.). This discovery included both

the April 15, 1987, and April 21, 1987, statements of Rodney Everett, as well as the statements of William Massey and Michael Ransome. *See id.*

The case against Plaintiff proceeded to trial in December 1988. *See* 4AC ¶ 81. Everett declined to testify on Fifth Amendment grounds, so the trial judge allowed the prosecution to read the jury a transcript of Everett's preliminary hearing testimony in which he testified, consistent with his statement to police, that Plaintiff had confessed to killing Heo. *See id.* ¶¶ 69, 81–82.[2]

Plaintiff alleges that his defense counsel did not have access to the activity sheets discussed above, including the activity sheet indicating that Everett had failed a polygraph examination. *See* 4AC ¶ 83. The jury convicted Crosland of second-degree murder and he was sentenced to life imprisonment. *Id.* ¶ 88.

On direct appeal, the Pennsylvania Superior Court reversed Plaintiff's conviction, based on its conclusion that the trial court's introduction of Everett's testimony from the preliminary hearing violated Plaintiff's confrontation rights. *See* 4AC ¶ 89. In a second trial of Plaintiff in January 1991, Everett (having now received immunity) testified, claiming both that he did not remember giving the statement, and denying making the statement, that he gave before—that Plaintiff had confessed to the Heo murder. *See* 4AC ¶ 92; *see also* Ex. P (Transcript of Rodney Everett's Testimony at 1991 Trial) at p. 99:16–100:20. He was then impeached with the statement he gave to police. *See id.* Crosland was once again convicted of second-degree murder and sentenced to life imprisonment. *See* 4AC ¶¶ 97–98.

---

[2] In addition to Everett, the prosecution presented another witness whose testimony in Crosland's criminal proceedings is the subject of Plaintiff's claims in this case: Delores Tilghman. *See generally* 4AC ¶¶ 71–80. Because the circumstances concerning Tilghman's testimony are not material to the arguments set out in the City Defendants' Motion for Partial Summary Judgment, the record evidence regarding those circumstances is not set out here.

Plaintiff alleges that he did not receive the allegedly exculpatory evidence discussed above—specifically, the statement Everett gave in his July 7, 1987 interview; the activity sheet indicating that Everett showed deception during a polygraph; and "notes and activity sheets identifying Michael Ransome as a suspect"—until 2020, when the District Attorney's office reviewed his case. 4AC ¶¶ 104–106. On June 22, 2021, his conviction was vacated based on a concession from the District Attorney's office and the charges against him were dismissed *nolle prosequi. See id.* ¶¶ 109–110.

Plaintiff subsequently initiated this action. Plaintiff's Fourth Amended Complaint contains five counts. Count 1 asserts a claim under 42 U.S.C. § 1983 for fabrication of evidence. Count 2 asserts a § 1983 claim for malicious prosecution. Count 3 asserts a § 1983 claim for "deliberate suppression of exculpatory evidence." Count 4 asserts a § 1983 municipal liability claim against the City. And Count 5 asserts a malicious prosecution claim under Pennsylvania state law.

The City Defendants now move for partial summary judgment as to certain defendants and certain theories of liability. Specifically, City Defendants contend that Plaintiff cannot adduce evidence supporting: (1) the personal involvement of Sgt. Descher in any alleged violation of Crosland's constitutional rights; (2) the fabrication or deliberate suppression of any evidence pertaining to Michael Ransome as an alternative suspect; (3) the deliberate fabrication or suppression of any information provided by Rodney Everett that would have affected the outcome of the criminal trial against Crosland; (4) that the disclosure of the results of Everett's polygraph information would have led to any admissible evidence that would have affected the outcome of the criminal trial against Crosland; and (5) that the City had a policy or custom of deliberately suppressing police activity sheets—and a vague custom of violating Fourth

Amendment rights cannot suffice—such that a municipal liability claim on that basis, can be maintained against the City.

## II.    <u>LEGAL STANDARD</u>

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id*. All inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985). "An inference based on speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Modaffare v. Owens-Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 700 (E.D. Pa. 2009); *see also Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (same).

When moving for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *See id*. at 321 n.3; *First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987). And, when ruling on a motion for summary judgment, the Court may only rely on admissible evidence. *See, e.g., Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94-95 (3d Cir. 1999).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof on a dispositive issue for trial, the non-moving party must go beyond the pleadings, and by

his own affidavits or declarations, or by the depositions and admissions on file, identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party must adduce more than a mere scintilla of evidence in his favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). The "[p]laintiff cannot simply reassert factually unsupported allegations in [his] pleadings." *Poles v. St. Joseph's Univ.*, 1995 WL 542246 at *5 (E.D. Pa. September 11, 1995) (citing *Celotex*, 477 U.S. at 325). The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id*. Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.*, 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993) (citing *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 595 F. Supp. 800, 802 (E.D. Pa. 1986)). "The plaintiff must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.    <u>ARGUMENT</u>

Relevant to this Motion, Plaintiff contends that Defendants violated his Fourteenth Amendment rights by (1) deliberately fabricating evidence against him (Count 1); and (2) deliberately suppressing exculpatory evidence (Count 3); and further contends that Defendants violated his Fourth Amendment rights, and Pennsylvania state law, by maliciously prosecuting him (Counts 2 and 5, respectively).[3] After setting out the elements of these claims, we show why

---

[3] While Plaintiff also contends that he was maliciously prosecuted in violation of his *Fourteenth* Amendment rights, the City Defendants maintain that there is no such recognized right to be free from malicious prosecution under that constitutional provision, and that a malicious prosecution claim under 42 U.S.C. § 1983 may rest only upon the *Fourth* Amendment. The City Defendants

these claims cannot proceed against Sgt. Descher for lack of his personal involvement, and why certain of Plaintiff's theories of liability on one or more of these claims must fail as to all of the City Defendants.

To succeed on a claim under the Fourteenth Amendment for evidence fabrication, the plaintiff must show he was convicted at a trial at which the defendant fabricated evidence, and there is a reasonable likelihood that, without the use of that evidence, would not have been convicted of murder. *Halsey v. Pfeiffer*, 750 F.3d 273, 294–95 (3d Cir. 2014). Plaintiff must therefore prove three elements: (1) the cited evidence is "fabricated" by the defendants; (2) the fabricated evidence was introduced and admitted at the plaintiff's criminal trial; and (3) there is a "reasonable likelihood" that, without the use of the fabricated evidence, the prosecution would not have been able to prove the plaintiff's guilt. *See id.*

The Third Circuit has recognized that "there is a notable bar for evidence to be considered 'fabricated.'" *Black v. Montgomery Cty.*, 835 F.3d 358, 372 (3d Cir. 2016). "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295. Instead, a "fabrication-of-evidence claim requires persuasive evidence [the defendant] formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus v. Union Cty.*, 73 F.4th 185, 194–95 (3d Cir. 2023). The plaintiff must also demonstrate "that the allegedly fabricated evidence was so significant that it could have affected the outcome of the criminal case." *Halsey*, 750 F.3d at 295.

---

recognize, however, that this Court held to the contrary in ruling on their Motion to Dismiss. *See* ECF No. 62 at 9–18. Accordingly, while standing on, and reserving all rights as to, this argument, the City Defendants will not repeat it in this memorandum.

Similarly, to succeed on the related claim under the Fourteenth Amendment for deliberate suppression of exculpatory evidence, the plaintiff must show by a preponderance of the evidence that he would not have been convicted of murder in the absence of the deliberate suppression of evidence. He must therefore prove four elements: (1) the cited evidence was favorable to the plaintiff; (2) the defendant knew the cited evidence was favorable to the plaintiff; (3) the defendant deliberately concealed the cited evidence from the prosecutor; and (4) if the evidence had been provided to the prosecution, the prosecution would not have been able to demonstrate plaintiff was guilty. *See Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021) ("[A] claim for deliberate deception . . . arises when imprisonment results from the *knowing* use of false testimony or other fabricated evidence[,] or from concealing evidence to create false testimony to secure a conviction." (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)) (emphasis in original)); *Drumgold v. Callahan*, 707 F.3d 28, 38 (1st Cir. 2013) (same); *Cosenza v. City of Worcester, Mass.*, 651 F. Supp. 3d 311 (D. Mass. 2023) (holding due process claim predicated upon law enforcement officers' deliberate concealment of exculpatory evidence, or deliberate deception, exists if officer: (1) knows information is exculpatory, (2) knows defense requested exculpatory information, and (3) fails to disclose information to prosecutor)); *cf. Haley v. City of Bos.*, 657 F.3d 39, 50 (1st Cir. 2011).

And as to malicious prosecution, a plaintiff asserting a claim of malicious prosecution under either the Fourth Amendment or Pennsylvania state law must demonstrate, among other things, that the defendant initiated a criminal proceeding against the plaintiff without probable cause and did so maliciously or for a purpose other than bringing the plaintiff to justice. *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 362–363 (3d Cir. 2003) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)) (applying Fourth Amendment); *York v.*

10

*Kanan*, 298 A.2d 533, 542 (Pa. Commw. Ct. 2023) (applying Pennsylvania law of malicious

prosecution). And because "prosecutors, rather than police officers, are generally responsible for

initiating criminal proceedings," a plaintiff asserting a malicious prosecution claim against an

officer much demonstrate that the officer "'knowingly provided false information to the

prosecutor or otherwise interfered with the prosecutor's informed discretion.'" *Brockington v.*

*City of Phila.*, 354 F. Supp. 3d 563, 569 (E.D. Pa. 2005) (quoting *Gatter v. Zappile*, 67 F. Supp.

2d 515, 521 (E.D. Pa. 1999)).

Here, Plaintiff's deliberate fabrication of evidence, deliberate suppression of exculpatory

evidence, and/or malicious prosecution claims fail against certain defendants and under certain

theories, for five reasons: (1) there is no evidence of the personal involvement of Defendant Sgt.

Descher sufficient to support any claim against him; (2) there is no evidence that any of the

Defendants deliberately suppressed information as to Michael Ransome as an alternative suspect

that would have affected the outcome of the criminal trial against Crosland; (3) there is no

evidence that any information provided by Rodney Everett was deliberately suppressed that

would have affected the outcome of the criminal trial against Crosland; (4) there is no evidence

that Rodney Everett's failure of a polygraph examination, if disclosed, would have affected the

outcome of the criminal trial against Crosland, as the results of the examination were

inadmissible and Plaintiff has not otherwise shown that such disclosure would have led to the

discovery of admissible evidence; and (5) there is no evidence that the City had a custom of

deliberately suppressing police activity sheets, a vague custom of violating Fourth Amendment

rights cannot suffice, and there is no evidence supporting a failure to train, discipline, or

supervise—such that a municipal liability claim on any of these theories must fail.

### A.  Plaintiff Has Failed to Demonstrate the Personal Involvement of Joseph Descher in Any Alleged Violation of Plaintiff's Constitutional Rights.

Plaintiff has not and cannot adduce evidence of the personal involvement of Joseph Descher in the alleged fabrication of evidence or deliberate suppression of evidence, nor in the alleged malicious prosecution of Plaintiff, and thus summary judgment should be entered in favor of Sgt. Descher on all claims against him.

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 107 (3d Cir. 1988). To the extent Plaintiff is attempting to hold a defendant liable based on his supervisory position, personal involvement still must be demonstrated and is present only "where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." *Jetter v. Beard*, 183 F. App'x 178, 181 (3d Cir. 2006).

As to Sgt. Descher, there is no evidence that he had any involvement in the underlying Heo homicide investigation, much less involvement in the alleged deliberate deception, fabrication of evidence, or malicious prosecution. The only documentary evidence connecting him with that investigation is that his name appears at the top of four police activity sheets from the investigation in 1987. *See* Ex. H (4/22/87 Activity Sheet); Ex. Q (4/24/87 Activity Sheet); Ex. R (7/25/87 Activity Sheet); Ex. L (12/9/87 Activity Sheet). His name does not appear in the body of the activity sheets or otherwise indicate his involvement of any of the activities described as being undertaken by other officers in those sheets. *See id.* And his name being on the top of the sheets does not indicate any involvement in the investigation whatsoever. At most, the name would indicate that the person named was the supervisor of the person that wrote the

activity sheet. Ex. S (Descher Dep.) at 20:8–20. There is no evidence that Sgt. Descher even reviewed these activity sheets. *See id.* at 47:24–48:21. And at his deposition, Sgt. Descher testified that he had no recollection whatsoever of the Heo homicide investigation. *Id.* at 17:14–15.

Because there is nothing to support the allegation that Sgt. Descher fabricated or deliberately suppressed any evidence, or provided any information to affect the prosecution's decision to charge Crosland with murder, or indeed had any involvement in the investigation of the Heo homicide or prosecution of Crosland, summary judgment in favor of Sgt. Descher on all claims is appropriate.

### B.    There Is No Evidence of Deliberate Deception as to Ransome Being an Alternative Suspect, His Physical Description, or Any Other Information Pertaining to Ransome.

Plaintiff alleges that information indicating that Michael Ransome was an alternative suspect was deliberately suppressed. *See* 4AC ¶ 65 (alleging that Detective "Cimino knowingly, intentionally, or recklessly failed to disclose to prosecutors . . . that detectives has received at least three credible reports identifying Michael Ransome as the perpetrator"); *id.* ¶ 106(a) (alleging that the defendant detectives concealed "[n]umerous notes and activity sheets identifying Michael Ransome as a suspect in the shooting and information showing the similarity in Ransome's physical description to that of the shooter").

However, there is no evidence that the Defendant Detectives suppressed any information as to Michael Ransome being a suspect. First, Rodney Everett himself told Detectives Hughes and Mangoni during his first interview on April 15, 1987, that Crosland told him that Michael Ransome was with Crosland when Crosland shot Heo. *See* Ex. E (4/15/87 Interview of Rodney Everett) at CITY 000018. This statement regarding Ransome's involvement was included in the interview record, which was provided to the prosecution and in turn Crosland's defense attorney.

*See* Ex. O (2/8/1988 Letter to Robert Hoffa, Esq.). Second, the Defendant Detectives interviewed Ransome, asking him questions clearly indicating a suspicion that he was involved in the attempted robbery and murder of Heo: They asked him where he was on the night of the murder and asked him to take a polygraph examination after he denied knowledge of the murder. Ex. J (4/24/87 Interview of Michael Ransome). These questions indicating suspicion of Ransome were transcribed in the interview record, a copy of which Detectives also provided to the prosecution, who in turn produced that interview to Crosland's defense attorney. *See id.*; Ex. O (2/8/1988 Letter to Robert Hoffa, Esq.). Given that these interview statements—indicating that police suspected Ransome's involvement—were provided to the prosecution, and in turn Crosland's defense counsel, there is no reasonable basis to conclude that the Defendant Detectives intentionally suppressed any evidence that Ransome's involvement was suspected. On the contrary, their suspicion that Ransome was involved along with Crosland was made plain in the documents provided to Crosland's criminal defense attorney.

Plaintiff will likely point to the notes in the homicide file of three telephone calls relaying tips from unidentified individuals that Ransome was involved in the Heo robbery and murder. *See* 4AC ¶ 106(a) (referring to "[n]umerous notes . . . identifying Michael Ransome as a suspect in the shooting"); ¶ 65(a) (alleging that the "detectives has received at least three credible reports identifying Michael Ransome as the perpetrator). But none of these calls were from firsthand witnesses; each relayed hearsay from an unidentified person. *See* Ex. B (handwritten messages) (relaying to Detective Nespoli a message from an "unidentified caller" who left no information for returning the call, but stating that Ransome shot Heo); *id.* (relaying message from a Bo Lim, President of the Korean Businessmen's Association, who "rec[eived] info from" an unidentified Black male caller that Ransome was the "shooter" and was accompanied by a man named

"Robert" who lived at 2600 Manton Street); *id.* (relaying message from a Bob Kotzpaner of the Citizen's Crime Committee, who "rec[eived an anonymous] phone call from [a Black female]" that the "doer" was a man named "Clinton" and the "lookout" was Ransome). Plaintiff cannot demonstrate that these messages—all of which constitute inadmissible hearsay from unidentified individuals—would lead to *any* admissible evidence, much less admissible evidence that would have changed the outcome of Crosland's criminal trials.

Plaintiff may also contend that the Defendant Detectives intentionally suppressed information as to Ransome's physical description. *See* 4AC ¶ 32 (alleging that the "Detectives quickly learned that Ransome was 5'6" tall and 125 pounds, matching the description of the perpetrator supplied by eyewitnesses"). But there is no evidence that this information was deliberately suppressed. Indeed, Ransome's height and weight appeared on a Philadelphia Police Department Form 75-229—a form titled "Investigator's Aid to Interview"—which was completed on the same day that Ransome was interviewed. *See* Ex. T (Form 75-229 for Michael Ransome). And, again, the interview record indicating that Ransome was a suspect was provided to the prosecution and in turn the defense. *See* Ex. O (2/8/1988 Letter to Robert Hoffa, Esq.). And even if any information about Ransome's description had been deliberately suppressed (it was not), there is no indication that Ransome's physical description would have affected the outcome of Crosland's criminal trials, given that Everett said Ransome was also present at the time of the shooting and the two shared a similar description: Crosland was, at, 5'3" and 115 lbs, a similar height and weight to the 5'6" tall, 125-lbs. Ransome. *Compare* Ex. T (Form 75-229 for Michael Ransome), *with* Ex. U (Form 75-229 for Curtis Crosland).

In sum, the fact that police suspected Ransome's involvement in the Heo murder was plain to Crosland's criminal defense attorney at the time of trial. Plaintiff can point to no

evidence that any information about Ransome's suspected involvement was deliberately suppressed, nor that any such information would lead to admissible evidence material to the outcome of the criminal proceedings. Accordingly, insofar as Plaintiff's deliberate fabrication or suppression of evidence claims are premised on such information, summary judgment is appropriate.

      C.    **There Is No Evidence of Deliberate Suppression of Evidence that Everett Sought to Become an Informant on Multiple Homicide Investigations; Identified Additional People to Whom He Claimed Crosland Confessed; or Identified Frank Turner as the Perpetrator of an Unrelated Murder.**

Plaintiff also alleges that the Defendant Detectives concealed certain information related to Everett that was disclosed in the Detectives' July 7, 1987 interview of him. Specifically, Plaintiff alleges that Detectives concealed that Everett: (1) "sought to become an informant on multiple homicide investigations," (2) "identified additional people to whom he claimed Crosland confessed" and (3) "identified Frank Turner as the perpetrator of another murder." 4AC ¶ 106(c). But there is no evidence that any of this information was deliberately suppressed, nor that any such information would lead to admissible evidence material to the outcome of the criminal proceedings.

First, as to the claim that the Detectives deliberately suppressed that "Everett sought to become an informant on multiple homicides," this information could be gleaned from Massey's interview, which was conducted the same day as Everett's first interview (April 15, 1987), and which was turned over to the prosecution, and in turn the defense. *See* Ex. F (4/15/87 Interview of William Massey); Ex. O (2/8/1988 Letter to Robert Hoffa, Esq.). Indeed, Massey stated in that interview that Everett had information on multiple crimes related to the same group of individuals, and that he was providing information about the Heo homicide in the hopes that doing so would help him with his pending criminal charge. *See* Ex. F at CITY 000002–03.

Specifically, Massey told the Detectives that Everett had "wrote the names down Curtis Crosland, Lester Turner, Michael Ransome, Frank Turner Jr. who is also known as "Squirt,"" and "said these males are involved in drug sales and robberies and shootings at the present time but it wasn't pertinent to this case. (H&B [Heo] murder)." Ex. F at CITY 000002. In addition, Massey told the Detectives, in response to their asking "why [Crosland] decided to reveal this information at this time" that Crosland "said the primary reason was that he wanted to get out of jail." *Id.* at CITY 000003. And Everett himself (in his second interview to the Detectives on April 21, 1987, which was turned over to the prosecution, listed all of "the members of the group," including Crosland, Ransome, Frank Turner Jr. and Lester Turner. Ex. G (4/21/87 Interview of Rodney Everett) at CITY 000024. Because all of this information was provided to the prosecution, and in turn the Crosland's defense counsel, Plaintiff cannot demonstrate that the Defendant Detectives deliberately suppressed evidence related to Everett's seeking to become an informant, or that any such information would have impacted the outcome of Crosland's criminal trials.

Second, as to the claim that the Defendant Detectives deliberately suppressed Everett's "identif[cation] of additional people to whom he claimed Crosland confessed," 4AC ¶ 106(c), Plaintiff overstates what Crosland stated during the July 7, 1987 interview. During that interview, Everett told the Detectives—after stating that he "really d[id] not know anything else"—merely what he had already told the Detectives during his April 15, 1987 interview (which was turned over to the prosecution, and in turn the defense): that Crosland "did n[o]t tell anyone else [about the Heo murder] besides Squirt who is Frank Turner, and Michael Ransome as far as I know." Ex. K (7/7/87 Interview of Rodney Everett) at CITY 000026.

To be sure, Everett did add that Crosland "*may* have told Talmadge Garwood," noting that Talmadge was "a close friend of [Crosland's]." Ex. K (7/7/87 Interview of Rodney Everett) at CITY 000026. And Everett likewise added that Crosland "*may* have hold his brother[], Raymond Crosland[.]" *Id*. And Everett noted also that Lester Turner and Michael Turner were Crosland's cousins, suggesting that Crosland *may* have told them too. *Id.* But Everett's July 7, 1987, statement makes clear that Everett did not *know* that Crosland told anyone, other than Frank Turner, Jr. ("Squirt"), Ransome, and himself; he only speculated that Crosland may have told others based on their relationships. That speculation is neither admissible on its own, nor provides any information that would otherwise impact the outcome of Crosland's criminal trials. Accordingly, the Defendant Detectives did not suppress any information as to other people to whom Everett claimed Crosland confessed.

Third, as to the claim that the Defendant Detectives suppressed information that Crosland had identified Frank Turner as the perpetrator of another murder, Plaintiff cannot demonstrate how this information would change the outcome of his criminal trial. Again, Massey's interview (which was provided to the prosecution and in turn the defense) made clear that Everett was aware that Frank Turner—and the other members of the group that included Crosland—were "involved in drug sales and robberies and shootings," though these were not "pertinent" to the Heo homicide. *See* Ex. F (4/15/87 Interview of William Massey) at CITY 000002. Plaintiff can point to nothing about the specific homicide Everett discussed in the July 7, 1987, interview that would have any bearing on Crosland's criminal trials for the Heo homicide.

Accordingly, insofar as Plaintiff's deliberate fabrication or suppression of evidence claims are premised on information relayed to the Defendant Detectives by Everett during the July 7, 1987, interview, summary judgment is appropriate.

**D.**    **There is No Evidence that Any Suppression of the Polygraph Results for Everett Would Have Changed the Outcome of the Trial**

Plaintiff also alleges that the Defendant Detectives deliberately concealed the results of Everett's polygraph examination indicating deception on Everett's part. *See* 4AC ¶ 106(b) (alleging that the Detectives concealed "[a]n activity sheet documenting the April 21, 1987, polygraph of Rodney Everett which concluded that Everett had given a false statement"). However, it was well established, at the time of both of Crosland's criminal trials, in 1988 and 1991, that polygraph results were not admissible as evidence in Pennsylvania criminal trials. *See, e.g.*, *Commonwealth v. Brockington*, 455 A.2d 627, 629 (Pa. 1983).

Plaintiff will undoubtedly contend that evidence need not be *admissible* to be subject to a claim for deliberate suppression. But even if that is so, a Plaintiff must demonstrate that the evidence—if not deliberately suppressed—would have changed the outcome of his criminal trial. *See Halsey*, 750 F.3d at 295 (noting that Plaintiff must show "that the allegedly fabricated evidence was so significant that it could have affected the outcome of the criminal case"). Here, the Plaintiff cannot demonstrate that the production of the results of the polygraph examination—which were themselves inadmissible—would have led to the production of any other evidence that would have affected the outcome of Crosland's criminal trial. Accordingly, insofar as Plaintiff's deliberate fabrication or suppression of evidence claims are premised on the results of the polygraph of Everett, summary judgment is appropriate.

**E.**    **There is No Evidence of a Municipal Policy or Custom of Deliberately Suppressing Activity Sheets, Vague Theories of Municipal Liability Cannot Suffice, and There Is No Evidence Supporting a Claim for Failure to Train, Discipline, or Supervise.**

Plaintiff also alleges that the City of Philadelphia is liable for the alleged constitutional violations of Crosland's rights under § 1983. However, certain theories of municipal liability

advanced by Plaintiff are unsupported by the evidence or otherwise cannot satisfy the requirements of municipal liability.

As a general matter, the liability of a municipality under Section 1983 is governed by *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Under *Monell,* a municipality cannot be subjected to liability solely because its agents or employees caused injury to another person. *Id.* Rather, a municipal entity may be liable under Section 1983 only when "execution of a government's policy or custom" deprives a citizen or constitutional rights. *Id.* at 694. An official *policy* exists only where a "decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Alternatively, a municipal *custom* exists where a practice is "so widespread as to have the force of law." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brow*n, 520 U.S. 397, 404 (1997).

To prevail on a municipal liability claim based on a municipal policy or custom, a plaintiff must allege that (1) a constitutionally-protected right has been violated, *and* (2) that the alleged violation *resulted from* a municipal policy or custom that exhibits deliberate indifference to rights of citizens. *Monell*, at 694–95; *see also Losch v. Borough of Parkesburg, Pa*., 736 F.2d 903, 910 (3d Cir. 1984) (further explaining that "[a] plaintiff must identify the challenged policy [or custom], attribute it to the city itself, and show a *causal link* between the execution of the policy [or custom] and the injury suffered." (emphasis added)). In other words, it is not enough to allege the existence of a municipal policy or custom of violating *any* constitutional rights, regardless of the relationship of those rights to the underlying facts of the plaintiff's case. Rather, a plaintiff must allege facts plausibly establishing "a direct causal link between a municipal

policy or custom and the alleged constitutional deprivation." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001)).

Here, Plaintiff alleges, among other things, that the City had a custom of deliberately concealing exculpatory information in police activity sheets. *See* 4AC at ¶¶ 118–121. But Plaintiff cannot adduce evidence that the City of Philadelphia had such a custom, or that it was the cause of the alleged deliberate suppression of evidence that Plaintiff alleges in this case. Neither of the Assistant District Attorneys who were deposed in this case testified that they requested these activity sheets—either routinely in all of their criminal cases, or specifically in Crosland's case. Specifically, Assistant District Attorney Joel Rosen, who prosecuted Crosland in his first trial in 1988, testified that he did not recall there being a change in practice in which police activity sheets being provided to the District Attorney's Office. *See* Ex. V (Rosen Dep.) at 51:2–7. And Assistant District Attorney Shelley Robins-New likewise recalled no such practice with regard to police activity sheets. *See* Ex. W (Robins-New Dep.) at 77:23–78:12. Absent any evidence that prosecutors at the time even requested such sheets, or believed them to be discoverable evidence that was required to be disclosed to the defense, Plaintiff cannot maintain that the City of Philadelphia had a practice of deliberately concealing them, or that this practice caused a violation of Plaintiff's constitutional rights.

In addition to this specifically alleged custom, and as noted in the City Defendants' Motion to Dismiss, Plaintiff's complaint generally alleges that there was a "long-established history of practices in the PPD in general and specifically in the PPD Homicide Division" that "directly and proximately caused" the individual officers' "unconstitutional conduct."

4AC ¶ 112. Only slightly more specifically, Plaintiff then goes on to list the following ways in which he alleges the City had a "custom of unconstitutional conduct"—listing "in particular":

- (1) "concealing or withholding exculpatory evidence"
- (2) "using coercive techniques in interviews and interrogations to obtain incriminating evidence"
- (3) "fabricating inculpatory evidence"
- (4) "tampering with or manufacturing evidence"
- (5) "fabricating incriminating statements from witnesses, suspects, and arrestees";
- (6) "conducting improper identification procedures"; and
- (7) "initiating prosecutions without probable cause."

*Id.* ¶¶ 113, 117; *see also id.* ¶ 127.[4]

Several of these alleged customs have no direct causal connection with the violations Plaintiff alleges occurred in his case. For example, as to the fourth alleged custom—"tampering with or manufacturing evidence"—the evidence cannot support the claim that any of the individual defendant officers "tampered" with evidence in his case. 4AC ¶ 113. There is, for example, no evidence (or even a specific allegation) that the Defendant Detectives altered any physical evidence. And, as to the sixth alleged custom, no evidence has been adduced that Crosland was arrested or prosecuted due to "an improper identification procedure[]." *Id.* Accordingly, even if Plaintiff could adduce evidence supporting the existence of a custom of "conducting improper identification procedures" or of "tampering with evidence" (which he cannot), the evidence would not establish a "direct causal link" between such customs and any

---

[4] Tellingly, the Fourth Amended Complaint separately alleges that "there was a pattern, practice, and custom within [PPD] of violating the constitutional rights of criminal suspects and others, including systemic violations of the Fourth and Fourteenth Amendments." 4AC ¶ 122. The framing of a custom in such a vague and "nebulous" manner, removed from the specific constitutional violations alleged to have occurred in his underlying case, is impermissible, because it has the effect of rendering the "direct causal link" requirement for municipal liability a dead letter. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official.").

alleged violation of Plaintiff's constitutional rights. *Carswell*, 381 F.3d at 244. Accordingly, the evidence cannot support a municipal liability claim based on such customs, and to the extent Plaintiff continues to maintain such a claim, summary judgment should be granted in favor of the City Defendants.

Finally, Plaintiff cannot adduce evidence to support municipal liability based on a failure to train, supervise, or discipline theory. Such a theory of municipal liability requires the plaintiff to establish that the municipality made "a deliberate or conscious choice" not to train, supervise, or discipline its officers causing a violation of constitutional rights. *Forrest v. Parry*, 930 F.3d 93, 105–106 (3d Cir. 2019). Specifically, the plaintiff must show that municipal policymakers were deliberately indifferent to constitutional rights, causing the alleged constitutional violation, by demonstrating that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* at 106. Here, Plaintiff has not adduced evidence to show that municipal policymakers were deliberately indifferent to constitutional rights by failing to train, discipline, or supervise.

## IV.  **CONCLUSION**

For the reasons set forth above, the Court should grant partial summary judgment in favor of the City Defendants, in the form of the proposed order provided herewith

Date: January 31, 2025                                Respectfully submitted,

                                                          /s/ Adam R. Zurbriggen
                                                          Adam R. Zurbriggen, Senior Attorney
                                                          Pa. Attorney ID No. 331169
                                                          Daniel Cerone, Div. Deputy City Solicitor
                                                          Attorney Identification No. 321507

City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5011 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov
daniel.cerone@phila.gov

*Attorneys for City Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CURTIS CROSLAND, | : | |
| Plaintiff, | : | |
| | : | **Civil Action** |
| v. | : | **No. 22-2416** |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Motion for Partial Summary Judgment was filed via the Court's electronic filing system and is available for viewing and downloading.

/s/ *Adam R. Zurbriggen*
Adam R. Zurbriggen
Senior Attorney
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5011 (Phone)
215-683-5397 (Fax)
Date: January 31, 2025          adam.zurbriggen@phila.gov